UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

JASON VALE,

                       Plaintiff,         **ORDER ADOPTING REPORT**
-against-                                **AND RECOMMENDATION**
                                                  10-CV-4270 (PKC) (LB)
UNITED STATES OF AMERICA,

                       Defendants.

-------------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      Plaintiff Jason Vale ("Plaintiff"), currently proceeding *pro se*[1], initiated this action on September 14, 2010 under the Federal Tort Claims Act ("FTCA") against the United States ("Defendant"), alleging medical malpractice for Defendant's failure to properly treat him while he was incarcerated in several Bureau of Prisons ("BOP") facilities. (Dkt. 1.) On November 28, 2014, Defendant moved for summary judgment seeking dismissal of the complaint. (Dkt. 80.) This matter was referred to the Honorable Lois Bloom for a Report and Recommendation ("Report"), pursuant to 28 U.S.C. § 636(b).

      On August 28, 2014, Judge Bloom issued her Report, recommending that Defendant's motion for summary judgment be granted. On September 28, 2015, Plaintiff timely filed his objections to the Report, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure ("FRCP") and 28 U.S.C. § 636. (Plaintiff's Objections to Judge Bloom's Report and Recommendation ("Pl. Obj."), Dkt. 88.) Defendant did not file any objections to the Report.

---

[1] Plaintiff was represented by counsel from the date the complaint was filed until 12/20/12, when Judge Bloom granted Plaintiff's motion to remove his attorney of record and permit Plaintiff to proceed *pro se* in this action. (Dkt. 39.)

Although Plaintiff raises a number of objections, they are largely duplicative, and can be distilled to one objection, namely, that Judge Bloom's finding that Dr. Peter L. Lipsius did not qualify as an expert under Federal Rule of Evidence ("FRE") 702 was erroneous.[2] For the reasons set forth below, the Court rejects Plaintiff's objection. Accordingly, pursuant to 28 U.S.C. § 636(b)(1) and FRCP 72(b)(3), the Court adopts the findings and recommendations in Judge Bloom's well-reasoned and thorough Report, in its entirety.

I. <u>Standard of Review</u>

When a party objects to a magistrate judge's report and recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); FRCP 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "After reviewing the report and recommendation, the Court may 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.'" *O'Diah v. Mawhir*, No. 08 Civ. 322, 2011 WL 933846, at *2 (N.D.N.Y. Mar. 16, 2011) (quoting 28 U.S.C. § 636(b)(1)(C)).

---

[2] Plaintiff also claims Judge Bloom incorrectly referred to the Governments 56.1 statement as "indicating that Plaintiff did not suffer from the condition [] which it is alleged that BOP neglected to treat, and that he refused medical treatment." (Pl. Obj. at 2.) However, the Court could not find any such references in the Report, and therefore denies this objection.

II.   Analysis

  A.   Summary Judgment was Properly Granted to Defendant on Plaintiff's FTCA Claim

Plaintiff's objection to Judge Bloom's finding that that Dr. Lipsius did not qualify as an expert under FRE 702 simply revives the same arguments and evidence that Plaintiff relied on in his summary judgment briefing. *O'Diah*, 2011 WL 933846, at *1 ("[g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error."). Nonetheless, based on its de novo review of this matter, the Court finds no reason to reach a different conclusion than Judge Bloom did.

  1. Plaintiff's FTCA Claim

The FTCA allows Plaintiff to bring this tort action against the federal government based on a state tort law cause of action. Under New York law, to state a medical malpractice claim, the plaintiff must: (1) satisfy the "private party analog" element of an FTCA claim, and (2) set forth the elements necessary to state a comparable cause of action under state law. 28 U.S.C. § 1346(b). "To establish a claim for medical malpractice under New York law, a plaintiff must prove (1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries." *Lettman v. United States*, No. 12 Civ. 6696, 2013 WL 4618301, at *3 (S.D.N.Y. Aug. 29, 2013) (quoting *Arkin v. Gittleson*, 32 F.3d 658, 664 (2d Cir. 1994)).

"Expert testimony is normally required to establish the applicable standard of practice and, in an appropriate case, to determine whether an alleged deviation from that standard was the proximate cause of a plaintiff's injuries." *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 343 (S.D.N.Y. 2005). As the Second Circuit explained in *Sitts v. U.S.*, "[i]t is well established in New York law that 'unless the alleged act of malpractice falls within the

competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case of malpractice.'" *Sitts*, 811 F.2d 738, 739 (2d Cir. 1987) (quoting *Keane v. Sloan-Kettering Institute for Cancer Research*, 464 N.Y.S.2d 548, 549 (2d Dep't 1983)). Further, "[e]ven where it might initially appear that the matter would be within the trier's ordinary competence, . . . if the defendant can proffer any evidence to support the view that a proper standard of care was followed, the plaintiff cannot prevail without introducing expert medical testimony." *Id.* at 740.

Here, Plaintiff fails to argue or demonstrate that the alleged malpractice "falls within the competence of a lay jury to evaluate." Even if expert testimony was not required to establish a *prima facie* case of medical practice, medical testimony is necessary to demonstrate the proper standard of care at issue. Plaintiff appears to concede that an expert is necessary in this case, and that Dr. Lipsius should be qualified as an expert under FRE 702. (Pl. Obj. at 1-2.) However, as discussed *infra*, Dr. Lipsius is not qualified to provide expert testimony.

2. The Admissibility of Plaintiff's Proposed Expert Testimony

FRE 702 governs the admissibility of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A trial court must decide whether a qualified expert's testimony rests on a reliable foundation, or is simply based on "subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590 (1993). The testimony must "assist the trier of fact to understand the evidence or determine a fact in issue." *Id.* at 591 (*quoting* FRE 702).

4

a. The Qualifications of Dr. Lipsius

As discussed at length in Judge Bloom's Report, Dr. Lipsius, who is not currently licensed to practice medicine in any jurisdiction, is not qualified to testify to the appropriate standard of care owed to Plaintiff and whether Defendant deviated from that standard. (Report at 17-18.)[3] While Plaintiff argues that Dr. Lipsius should be qualified as an expert since he has a background in Internal Medicine, he was specifically trained as an anesthesiologist – an area wholly unrelated to Plaintiff's claims. (Pl. Obj. at 2; Report at 18.) In addition, Dr. Lipsius has no specific background or knowledge involving any of the specific diagnoses or medical conditions in this case. (Report at 18.) Dr. Lipsius conceded that he is unable to comment upon the proper treatment of Barrett's Esophagus, a condition that is a significant component of Plaintiff's medical malpractice claim. (*Id.*) Accordingly, Dr. Lipsius plainly is not qualified to testify as an expert.

a. The Reliability of Dr. Lipsius's Testimony

With any expert testimony, the trial judge's role is to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Judge Bloom correctly found that Dr. Lipsius's report is unreliable as it provides no foundational basis for his opinion. (Report 20-21.) During his deposition, Dr. Lipsius offered no further opinion or clarification except to state that Plaintiff was "medically speaking, . . . a mess" when he left federal custody. (*Id.* at 20.) Dr. Lipsius claimed that Plaintiff's conditions should have

---

[3] Indeed, Judge Bloom's thorough Report contains a litany of facts that also render Dr. Lipsius unqualified to testify as a medical expert, including: (1) he has not practiced medicine since 1999; (2) he is a former habitual user of and/or dependent on narcotics, barbiturates or drugs having similar effects, in violation of New York Education Law § 6530(8), which resulted in him surrendering his medical license; (3) he has been convicted of two counts of falsifying business records and one count of wire fraud; (4) he was not forthcoming with Judge Bloom about his professional background; and (5) he has never been qualified to testify as an expert in any court. (Report 12-14.)

5

been discovered earlier, but provided no specifics on how the BOP was negligent, except for one isolated statement: that if a computerized tomography ("CT") scan had been performed by medical staff in November 2006, it would have shown Plaintiff's fistula. (*Id.*) However, Plaintiff underwent a CT scan in March 2006, which did not reveal a fistula. Plaintiff also underwent a CT scan in October 2007 and July 2008, and both did not reveal a fistula. (*Id.* at 21.) Dr. Lipsius failed to provide any basis to support his opinion that a November 2006 CT scan of Plaintiff' chest would have shown a fistula when CT scans performed both *before* and *after* that time did not reveal a fistula. The Court, therefore, agrees with Judge Bloom that Dr. Lipsius's opinion that the BOP should have diagnosed Plaintiff's conditions earlier, despite later CT scans that did not reveal the condition, is merely speculative. (*Id.*)

While Plaintiff is correct that it is the role of the jury to determine the credibility of an expert witness, it is the trial court's "gatekeeping" obligation to ensure that the expert testimony is reliable and relevant before it is presented to the jury. (Pl. Obj. at 3.) *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999) (finding that the trial judge's gatekeeping obligation applies to all expert testimony). Here, the proffered expert testimony is neither.

III. Conclusion

Accordingly, for the reasons set forth in the Report, Dr. Lipsius is not qualified to testify as an expert, nor are his opinions reliable under the *Daubert* standard. Therefore, Dr. Lipsius's expert testimony is inadmissible. Since Plaintiff has failed to provide admissible testimony from a qualified expert that demonstrates that Defendant deviated from the applicable standard of care and that Defendant's deviation was the proximate cause of Plaintiff's injuries, Defendant's motion for summary judgment is granted, and this case is dismissed. The Clerk's Office is respectfully directed to terminate this matter.

SO ORDERED:

/s/
PAMELA K. CHEN
United States District Judge

Dated: September 30, 2015
       Brooklyn, New York